**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

LAUREN CONNOLLY,

     **Plaintiff,**

v.                                      **Case No.:**

BANYAN TREATMENT AND
RECOVERY, LLC d/b/a BANYAN
TREATMENT CENTER,

     **Defendants.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Lauren Connolly ("Plaintiff"), by and through undersigned counsel, herby sues

Banyan Treatment and Recovery, LLC d/b/a Banyan Treatment Center ("Defendant") and in

support of states as follows:

**NATURE OF ACTION**

1. This is an action for monetary damages, costs, and reasonable attorneys' fees to redress

Defendant's violations of Plaintiff's rights under the Florida Civil Rights Act of 1992, Fla. Stat. §

760.01 *et seq.* ("FCRA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e

*et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.

§ 621 *et seq.* ("ADEA"), Florida's Private Sector Whistleblower Act, Fla. Stat. § 448.102 *et seq.*

("FPWA"), and the Federal False Claims Act, 31 U.S.C. § 3721 *et seq.* ("FCA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331, 1343, and

1367 and 31 U.S.C. § 3732 (a).

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

4.     Plaintiff is a resident of Palm Beach County, Florida.

5.     Plaintiff's age is sixty (60).

6.     Plaintiff's sex is female.

7.     Plaintiff worked for Defendant in Palm Beach County, Florida.

8.     Defendant is a Florida Limited Liability Company.

9.     At all times mentioned herein, before and after, the persons responsible for perpetrating discriminatory and/or retaliatory actions against Plaintiff were agents and/or employees of Defendant and were at all times acting within the scope and course of their agency and/or employment, and/or the actions were expressly authorized by Defendant and/or their actions were ratified by Defendant, thus making Defendant liable for said actions.

10.    Plaintiff is an "employee" within the meaning of the FCRA, Title VII, ADEA and FPWA.

11.    Defendant is an "employer" within the meaning of the FCRA, Title VII, ADEA and FPWA.

## PROCEDURAL REQUIREMENTS

12.    Plaintiff timely dual-filed a charge (the "Charge") of discrimination against Defendant with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC").

13.    On February 5, 2024, the EEOC issued a Dismissal and Notice of Rights letter (the "Letter") granting the Plaintiff the right to file a lawsuit within ninety (90) days of receipt of the Letter.

14.     This Complaint is being filed within ninety (90) days of receipt of the Letter.

**STATEMENT OF FACTS**

15.     Defendant provides mental health care and rehabilitation programs across approximately fifteen (15) facilities.

16.     Defendant submits insurance claims and bills to insurance companies such as, Blue Cross and Blue Shield of Florida, Ambetter, Aetna, and Cigna.

17.     Defendant also submits claims through Medicaid and Medicare.

18.     In or around August 2015, Defendant hired Plaintiff as a Director of Intake.

19.     During Plaintiff's eight years of employment with Defendant, she held several positions, including: Director of Intake, Director of Finance, National Director of Patient Accounts, and Vice President of Patient Accounts.

20.     Plaintiff is prided on her values of patient transparency and financial responsibility, by guaranteeing clients receive a good faith estimate of patient services.

21.     In or around December 2022, Defendant implemented the Ancillary Services Project, with the belief this project would produce millions of dollars in additional revenue.

22.     This Ancillary Services Project created ancillary billing on bundled services. This resulted in increased charges for services already rendered as far back as 2019, or nearly four years prior.

23.     Ancillary Services include, but are not limited to, supportive or diagnostic measures, like "housing fees," lab testing, and radiology scans.

24.     The Ancillary Services Project took effect across all fifteen (15) of Defendant's facilities, resulting in millions of dollars in additional revenue.

25.     As a result of the Ancillary Services Project, Defendant received approximately 850 complaints from patients, clients, and family members, wherein many alleged "insurance fraud."

26. The complaints included but were not limited to true allegations and claims for the billing of: (1) services never provided; (2) unnecessary services; (3) services for treatment by doctors whom patients never met or treated by; (4) services the patients were never notified, authorized or agreed to receipt of; (5) out-of-network services the client never agreed to or received notice of; (6) services received years before the current billing receipt and date of discharge; (7) insurance checks mailed to patients and clients for ancillary reimbursement.

27. Beginning on or around February 17, 2023, Plaintiff stated her opposition to Defendant's Chief Operating Officer, Chief Financial Officer, Vice President of Human Resources, and the Director of Revenue Cycle regarding the Ancillary Services Project as she believed, and it was in fact, unlawful under State and Federal Law.

28. Plaintiff's complaints were met with retaliatory backlash from Defendant's management and owners.

29. Defendant ignored Plaintiff's opposition, as she was viewed as "not following the process" and an "impediment" to the Ancillary Services Project.

30. Subsequently, Defendant isolated Plaintiff from the Ancillary Services Project operations, cut her work, and limited her responsibilities.

31. Subsequently, as Defendant was engaged in merger discussions, Defendant distributed offers of continued employment and merger bonuses to its chief officers, vice presidents, and even directors.

32. Upon information and belief, seven (7) of the eight (8) people that received continued employment offers and merger bonuses were male.

33. Upon information and belief, six (6) of the eight (8) people that received continued employment offers and merger bonuses were under the age of forty (40).

34.    Defendant excluded Plaintiff from the continued employment offers and merger bonuses despite her eligibility as Vice President of Patient Accounts.

35.    While distributing these continued employment offers and merger bonuses, Defendant engaged in zero communication with Plaintiff regarding the status of her employment or any bonus.

36.    During this time, Plaintiff notified Defendant of her intent to pursue legal action regarding the illegality of the Ancillary Services Project and the retaliation against her.

37.    In response, Defendant demanded Plaintiff's resignation.

38.    When Plaintiff refused and continued to oppose Defendant's unlawful practices, Defendant terminated her employment on or around July 13, 2023.

39.    Upon information and belief, Plaintiff's position was shortly thereafter filled by another, younger, employee.

40.    Plaintiff has satisfied all conditions precedent, or they have been waived.

41.    Plaintiff has retained the undersigned attorneys and agreed to pay them a fee.

### CLAIMS FOR RELIEF

### Count I – Discrimination in violation of the FCRA - Age

42.    All allegations prior to Count I are reallaged and incorporated herein.

43.    Defendant subjected Plaintiff to disparate treatment regarding the terms and conditions of her employment because of Plaintiff's age, sixty (60),

44.    Defendant refused to offer Plaintiff continued employment, a merger bonus, and ultimately terminated Plaintiff.

45.    Plaintiff's similarly situated co-workers under the age of forty (40) were offered continued employment and a merger bonuses.

46.    Plaintiff's age was the reason for Defendant's discrimination of Plaintiff.

47.     As a direct and proximate cause of Defendant's intentional discrimination, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

### Count II – Discrimination in violation of the ADEA

48.     All allegations prior to Count I are realleged and incorporated herein.

49.     Defendant subjected Plaintiff to disparate treatment regarding the terms and conditions of her employment because of Plaintiff's age, sixty (60),

50.     Defendant refused to offer Plaintiff continued employment, a merger bonus, and ultimately terminated Plaintiff.

51.     Plaintiff's similarly situated co-workers under the age of forty (40) were offered continued employment and a merger bonuses.

52.     Plaintiff's age was the reason for Defendant's discrimination of Plaintiff.

53.     As a direct and proximate cause of Defendant's intentional discrimination, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

### Count III – Discrimination in violation of the FCRA – Sex

54.     All allegations prior to Count I are realleged and incorporated herein.

55.     Defendant subjected Plaintiff to disparate treatment regarding the terms and conditions of her employment because of Plaintiff's sex, female.

56.     Defendant refused to offer Plaintiff continued employment, a merger bonus, and ultimately terminated Plaintiff.

57.     Plaintiff's similarly situated male co-workers were offered continued employment and a merger bonuses.

58.     Plaintiff's sex was a motivating factor in Defendant's discrimination of Plaintiff.

59.   As a direct and proximate cause of Defendant's intentional discrimination, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

### Count IV – Discrimination in violation of Title VII – Sex

60.   All allegations prior to Count I are reallaged and incorporated herein.

61.   Defendant subjected Plaintiff to disparate treatment regarding the terms and conditions of her employment because of Plaintiff's sex, female.

62.   Defendant refused to offer Plaintiff continued employment, a merger bonus, and ultimately terminated Plaintiff.

63.   Plaintiff's similarly situated male co-workers were offered continued employment and a merger bonuses.

64.   Plaintiff's sex was a motivating factor in Defendant's discrimination of Plaintiff.

65.   As a direct and proximate cause of Defendant's intentional discrimination, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

### Count V – Retaliation in violation of 31 U.S.C. § 3730(h)

66.   All allegations prior to Count I are reallaged and incorporated herein.

67.   Medicare is a government health insurance program for people age 65 or older, and some disabled people under age 65. Medicare is administered by the Department of Health and Human Services.

68.   During Plaintiff's employment with Defendant, the services specified herein were provided to Medicare beneficiaries in the State of Florida.

69.   During Plaintiff's employment, Defendant was a "person" within the meaning of the Social Security Act, 42 U.S.C. § 1301(a)(3), and as such, were subject to its provisions.

70.   During Plaintiff's employment, Defendant submitted claims for benefit or payment under a

"Federal health care program," within the meaning of the Social Security Act. *See* 42 U.S.C. § 1320a-7b(f).

71.     Because Defendant was submitting claims for benefit or payment under a "Federal health care program," it had a legal obligation to not make false statements or false representations of a material fact in its applications for benefit or payment. *See* 42 U.S.C. § 1320a-7b(a)(1).

72.     As a "person" subject to the provisions of the Social Security Act, at all times material hereto, Defendant had a legal obligation to submit valid, accurate claims for payment under the Medicaid program. *See* Fla. Stat. § 409.920(a)(1) (2023).

73.     The Federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, provides, *inter alia*, that any person who (A) "knowingly presents, or causes to be presented, a false and fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [and/or] (C) conspires to commit a violation of [31 U.S.C. § 3279(a)(1)] is liable to the United States for a civil monetary penalty, adjusted for inflation, plus treble damages. 31 U.S.C. § 3729(a)(1)(A)-(C).

74.     The term "claim" means "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Governments behalf or to advance a Government program or interest, and if the United States Government  - (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipients for any portion of the money or property which is requested or demanded …". 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

75.     The term "material" means having a natural tendency to influence, or be capable of

influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

76.     Further, "[a]ny employee … shall be entitled to all relief necessary to make that employee … whole, if that employee … is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee … or associated others in furtherance of an action under [31 U.S.C. § 3730] or other efforts to stop 1 or more violation of this [False Claims Act]." 31 U.S.C. § 3730(h)(1).

77.     "Relief … shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. *Id.* at § 3730(h)(2).

78.     Defendant knowingly made, used, or caused to be made or used, false records or statement to get false or fraudulent claims paid or approved by the United States in violation of 31 U.S.C. § 3729(a)(1)(B).

79.     Defendant failed to offer Plaintiff continuing employment offers, a merger bonus, and ultimately terminated her employment in retaliation for her efforts to prevent one or more violations of 31 U.S.C. § 3721 *et seq.*, in violation of 31 U.S.C. § 3730(h).

80.     As a direct and proximate cause of Defendant's intentional retaliation, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

**Count VI – Retaliation in violation of the FPWA**

81.     All allegations prior to Count I and Paragraphs 67 – 79 are realleged and incorporated herein.

82.     Plaintiff objected to the Defendant's actual violations of the FCA, and the rules and regulations promulgated thereunder.

83.     By objecting to the Defendant's actual violations of the FCA and the rules and regulations promulgated thereunder, Plaintiff engaged in protected activity under the FPWA.

84.     Defendant unlawfully retaliated against Plaintiff for engaging in protected activity under the FCA and FPWA by terminating her employment.

85.     As a direct and proximate cause of Defendant's intentional retaliation, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

### Count VII – Retaliation in violation of the FPWA

86.     All allegations prior to Count I are realleged and incorporated herein.

87.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes it unlawful to engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204 (2023).

88.     "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity. Fla. Stat. § 501.203(8) (2023).

89.     Defendant engaged in deceptive and unfair acts of trade when they billed their customers for (1) services never provided; (2) unnecessary services; (3) services for treatment by doctors whom patients never met or treated by; (4) services the patients were never notified, authorized or agreed to receipt of; (5) out-of-network services the client never agreed to or received notice of; and (6) services received years before the current billing receipt and date of discharge.

90.     Further, these deceptive and unfair practices were in violation of 31 U.S.C. § 3721 *et seq.*

10

91.     Plaintiff objected to the Defendant's actual violations of FDUTPA, and the rules and regulations promulgated thereunder.

92.     By objecting to the Defendant's actual violations of FDUTPA and the rules and regulations promulgated thereunder, Plaintiff engaged in protected activity under the FPWA.

93.     Defendant unlawfully retaliated against Plaintiff for engaging in protected activity under the FPWA by terminating her employment.

94.     As a direct and proximate cause of Defendant's intentional retaliation, Plaintiff has suffered damages and is entitled to relief set forth in the Prayer for Relief below.

### Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests:

(a)     That process issue and that this Court take jurisdiction over the case;

(b)     Judgement against Defendant in the amount of Plaintiff's back wages and back benefits, front-pay, compensatory damages, including emotional distress damages, liquidated damages, punitive damages, declaratory relief, injunctive relief, reinstatement and prejudgment interest thereon;

(c)     All costs and reasonable attorneys' fees in litigating this matter (including expert fees); and

(d)     For such further relief as this Court deems just and equitable.

### JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully submitted this 29th day of February, 2024 by:

/s/ Jason B. Woodside
Jason B. Woodside, Esq.
FL Bar No. 104848
Woodside Law, P.A.
100 South Ashley Drive
Suite 600

Tampa, FL 33602
T: (813) 606-4872
F: (813) 333-9845
Email: Jason@woodsidelawpa.com
*Attorney for Plaintiff*

s/ Sarah E. Gallagher
Sarah E. Gallagher, Esq.
FL Bar No. 1020704
Gold Coast Counsel, APC
421 Broadway PMB #1533
San Diego, CA 92101
T: (833) 727-2442
Email: Sarah@goldcoastcounsel.com
*Attorney for Plaintiff*